DAVIS SEWING MACHINE COMPANY V. LAWRENCE *et al.*, appellants.

*Guaranty — liability of guarantor — Construction of contract — performance.*

Plaintiff, a sewing machine company, entered into a contract with B. whereby plaintiff appointed B. its agent and agreed to furnish B. machines at certain rates, and B. agreed to account for all machines or other property put into his hands, to return the proceeds of sales, and all unsold machines or other property at the expiration of the contract, and make good all damages to machines and property so returned. Plaintiff also agreed to take from B. in payment for machines sold, such notes as B. might, *from time to time*, receive in their sale, payable to his order and indorsed by him to plaintiff. To secure to plaintiff the performance of this agreement defendant executed the following guaranty : "For value received, I hereby guarantee to the D. S. M. Co. the full performance of the within contract on the part of B. and the payment by said B. to the D. S. M. Co. of all sums of money that may be due or owing by said B. to the D. S. M. Co., either by note, account, indorsement or otherwise." In an action on the guaranty : *held*, that in order to render defendant liable for B.'s acts, they must be acts done as agent and not in any other capacity ; and a sale of the machines by plaintiff to B. would change the relation of plaintiff and B. to that of vendor and vendee, and release defendant from liability.

In construing the contract and guaranty the court decided the following points : Defendant would not be liable for money lent by plaintiff to B. ; nor for a horse, wagon and sleigh procured by B. of plaintiff. But the contract did embrace thread and oil, and machines delivered to B. by P., another agent of plaintiff, with the latter's direction and consent. So defendant would be liable on notes *guaranteed* by B. as well as notes *indorsed*. Under the contract plaintiff was not bound to accept notes non-negotiable, or notes not payable entirely in money, and defendant was liable for the value of machines for which such notes were offered.

Under such a contract and guaranty no demand of performance of the principal and notice to the surety was necessary before commencing the action on the guaranty.

APPEAL by defendants from a judgment on the report of a referee in favor of plaintiff. The action was brought by the plaintiff against George W. Lawrence and Daniel Lee upon a guaranty.

On the 15th day of August, 1871, an agreement was entered into between the plaintiff, a corporation duly organized and doing business at the city of Watertown, and one William H. Babcock, under the seals of the respective parties, in and by which the plaintiff appointed said Babcock its agent, for the sale of its machines,

in the counties of Jefferson, Lewis, St. Lawrence, Franklin and Clinton.

The plaintiff agreed to furnish Babcock such machines as it manufactured at their regular retail prices, from which should be deducted thirty per cent on all sales of machines and attachments, and should Babcock elect to pay cash in advance for machines, ten per cent additional deduction should be made. Babcock agreed to account for all machines or other property put into his hands by said company, and to return to it the entire proceeds of sales, and to return all unsold machines or other property at the expiration of the contract to said company, in good order, and to make good to said company any damage to said machines or other property so returned, arising from any cause not produced by said company, ordinary wear and tear of business excepted.

The plaintiff agreed to take from said Babcock in payment for machines, such notes as Babcock might, from time to time, receive on the sale of machines, provided such notes were payable to his order and indorsed by him.

To secure to the plaintiff the performance of said agreement, Babcock procured and delivered to the plaintiff the' guaranty executed by the defendants, of which the following is a copy, viz.:

"For value received I hereby guarantee to the Davis Sewing Machine Co. the full performance of the within contract on the part of W. H. Babcock, and the payment by said Babcock to said company of all sums of money that may be due or owing by said Babcock, either by notes, account, indorsement or otherwise. Dated at Watertown, N. Y., the 15th day of August, 1871.

(Signed) "DAVID LEE,
" GEO. W. LAWRENCE."

A large number of machines and attachments were delivered to B., who sold the same, took notes therefor, and indorsed or guaranteed the payment thereof, and delivered them to the plaintiff, and was credited with the same. As to these charges or credits no question is made except certain objections to any liability of the defendants for any cause whatever under said contract, which will be referred to hereafter.

The following items of charge against the defendant were objected

to by the defendant's counsel as not being covered by either the contract between B. and the company or by the guaranty.

1. Cash advanced by the company to Babcock amounting to $254.19. 2. Goods delivered to and credited to one McPherson and charged to Babcock, amounting to $150.93. 3. A sewing machine wagon, $150. 4. A bob-sled, $55. 5. Repairs to machines, $9.01. 6. A note of certain persons named Gardner and Clemons, of $70. 7. A guaranty of two notes of one Moore. 8. Needles, thread, silk, etc., and all articles not shown to be embraced within the terms "machines" and "attachments."

The defendants claimed that the following items should be credited to defendants, and charged to the plaintiff: Notes of Mary Smith, $62; Rosetta P. Lewis, $55; Luther Wright, $60.90; S. Benjamin, $55; Mary A. Hardy, $50; James Burns, $60; Joel Hulbert, $60; Erastus Harris, $35.

The defendants also claimed that there should be deducted from plaintiff's account a second-hand sewing machine; also, eleven notes of L. De Lawyer of $55.

The defendants' counsel objected to any recovery in this case against the defendants, because by the contract between plaintiff and Babcock, the relation of principal and agent was created, and it was for the fulfillment of his obligations as agent that defendants became responsible. The relation was subsequently changed into that of vendor and vendee, and for the performance of Babcock's obligations under this relation, defendants did not assume to be responsible. Also, because the relation created by the contract between plaintiff and Babcock has never been terminated. And because no demand was made by plaintiff of Babcock to account for the money received, or for the return of the machines unsold.

The referee ordered judgment against defendants for $1,059.54, and from that judgment the defendants appeal.

*D. O'Brien,* for appellants.

*Charles D. Wright* and *James F. Starbuck,* for respondent.

MULLIN, P. J. I will proceed and consider in the first place the objections made by the defendants' counsel to any recovery in the action against the sureties. These are, 1st. That while the agreement, the performance of which was guaranteed by defendants,

created the relation of principal and agent between the parties, the relation was subsequently changed, without the consent of the defendant, to that of vendor and vendee, and such a change in the relation of the parties discharged the sureties.

The plaintiff, by its contract with Babcock, made him its agent for the sale of the machines manufactured by it; to render defendants liable for his acts, they must be acts done as agent, and not in any other character or capacity.

The referee finds that all the property mentioned in the complaint and charged in plaintiff's account against Babcock was treated as a sale and delivery to Babcock by plaintiff, at the dates mentioned, and the absolute title passed from plaintiff to Babcock at the time of the delivery aforesaid. Had the property been delivered to Babcock as agent, the title would have remained in the plaintiff, and in case of a fraudulent or unauthorized disposition of it or its proceeds, the plaintiff could follow and reclaim it and in that way protect the defendants. But when Babcock got title as purchaser, the plaintiffs could no longer claim the title, and Babcock could at pleasure transfer it or its proceeds to any third person discharged from any claim or lien of the plaintiff.

Thus one of the greatest securities that the defendants had of protection against loss was taken from them, and their liability largely increased without their knowledge or consent. It is an elementary principle in the law of suretyships, that the obligation of the surety is not to be increased or extended without his consent. It seems to me it has been done in this case, and that the defendants were discharged from their contract.

We do not know upon what evidence the referee relies to support the foregoing finding. I am unable to find any evidence to authorize the findings except the manner in which the books of the plaintiff were kept in which Babcock was charged with the machines, etc., delivered to him and credited with notes received for such machines and property. This evidence alone would not justify the finding that the relation of principal and agent had been abandoned, and that of vendor and vendee substituted. I apprehend the accounts between principal and agent are quite uniformly kept in that way without intending thereby to treat the agent as the purchaser.

I see no way that we can get rid of the finding. So far as it is a conclusion of law and not excepted to, it becomes the law of the case and is not reversable by this court. But as it is possible that

upon another trial there may be a different finding upon this ques-. tion, it is proper that we should consider some of the questions presented by this appeal and which must be passed upon on the next trial.

Then are the defendants liable for the money lent by the plaintiff to Babcock? We are of opinion that they are not. The defendants are liable only for property delivered to Babcock to be sold by him as the agent of the plaintiff or the proceeds received from such sales. The money loaned became the property of Babcock. It was no longer the property of the plaintiff; Babcock was at liberty to use it for any purpose he deemed proper. In dealing with it he was dealing with his own property. Plaintiff was not bound by the contract to pay Babcock wages or his expenses. All expenses attending the sale of the machines, etc., were to be borne by Babcock. There was, therefore, no legitimate purpose connected with the agency for which the money could be received and applied as the money of the plaintiff.

It is said in Burge on Sur. 40, that the obligation of the surety is not to be extended to any other subject, person or time than is expressed or necessarily included in it. A few cases will illustrate the rigor with which the courts have applied this principle. When the guaranty is to re-imburse to the plaintiff so much as he shall expend in doing certain work, he cannot recover for money expended in doing the work himself. P. 47. A bond given for a security for a collection of customs was held not to apply to moneys collected under a law levying a new duty on coals passed after the bond was given. Burge on Sur. 49; Tell on Guar. 92. A defendant guaranteed to pay for such gold as the plaintiff might supply to a working goldsmith for the purposes of his trade, and the plaintiff discounted bills of exchange for the goldsmith and furnished the amount of the bills partly in money and partly in gold; the trans-action was held not within the terms of the guaranty, and that the surety was not liable even for the amount of the gold supplied, though supplied in the way of his business. *Evans* v. *Whyle*, 5 Bing. 485.

A surety for moneys collected by an overseer is not liable for a sum borrowed by the overseer and applied by him to parochial uses, as an overseer has no authority to borrow money. For further illustration of the strictness with which the principle has been applied, see Burge on Sur. 50–73; *Ludlow* v. *Simond*, 2 Caines'

Cas. 1; *Walsh* v. *Bailie,* 10 Johns. 180; *Penoyer* v. *Watson,* 16 id. 100; *Gates* v. *McKee,* 13 N. Y. 232; *Manhattan Gas-Light Co.* v. *Ely,* 39 Barb. 174; *Stewart* v. *Ranney,* 26 How. 279; *Rochester City Bank* v. *Elwood,* 21 N. Y. 88.

The same principle that releases the defendants from liability for the money releases them from liability for the horse, wagon and bob-sleigh. The word " attachment " used in the contract does not, as defined by lexicographers, embrace thread and oil, and some other items for which the plaintiff has been allowed to recover; if the word has a meaning amongst those engaged in the manufacture and sale of sewing machines that would embrace " these articles," it should have been proved; not being proved we must give the word its popular meaning, and thus defined, the thread, etc., must be excluded.

But by the contract Babcock was bound to account not only for " *all machines but all other property put into his hands by said company.*" The thread, etc., is undoubtedly covered by this clause of the contract, and if it was received by Babcock in his capacity as agent, defendants are properly chargeable for his neglect to account for it.

Repairs were properly chargeable to defendants if they were rendered necessary by reason of damage to the machines delivered to Babcock, not arising from any fault or neglect of the company or the result of ordinary wear and tear of business, and the referee having found in favor of plaintiff for such repairs, we must assume that such allowance is the amount of damages to which the plaintiff was justly entitled.

The defendants were properly charged for the machines delivered to Babcock from McPherson. McPherson was an agent of the company and held the machines in that capacity. When, therefore, they were transferred by McPherson to Babcock, with the consent of the company, it was to all intents and purposes the same as if delivered from the company's office. The consent of Babcock to receive them, and that they should be charged to him, is *prima facie* evidence of a delivery.

The defendants are liable for the amount of the Gardner and Clemons and Weaver notes, guaranteed by Babcock. The plaintiff was not bound to accept and give Babcock credit for notes not indorsed by him, nor would defendants have been liable except for paper so indorsed. But the guaranty is that the defendants shall

be liable for all sums due or owing by said Babcock to plaintiff, by note, account, indorsement or otherwise. The note having been given for a machine sold, it is within the scope of the defendants' contract, and they were liable for the amount of the note.

The notes of Harris Hulbert and Burns were delivered to the plaintiff about the 1st of January, 1873, and not accepted by the company, because they were not negotiable and not payable in money. Babcock and the defendants were liable for the machines, and were not entitled to credit for the notes.

The notes of Smith, Lewis and Wright were never accepted by the company, but taken back by Babcock, and the notes paid to him or the machines taken back. These notes it is said had upon their backs a memorandum signed by the payees that said notes were payable in money, wood, lumber or coal, to be delivered at Carthage.

If this was an entry that the maker could insist on as a modification of the contract, the notes were such as plaintiff was not bound to receive, and defendants were liable for the price of the machines.

The defendants are entitled to credit for the notes of Benjamin and Hardy, as they were delivered to plaintiff and no reason assigned why they should not be credited. If credited, then defendants become liable for Babcock as indorser thereon.

Neither demand of performance of the principal nor notice of his default to the defendants was necessary before plaintiff could maintain this action against the defendants. 2 Am. Lead. Cas. 56, 61, 78, 84, 86, 96, and cases cited.

As a new trial becomes indispensable by reason of the finding of the referee, I have not considered the exceptions taken by defendants' counsel to the rulings of the referee on the trial.

Judgment reversed and new trial ordered before another referee, costs to abide event.

*Judgment reversed and new trial ordered.*